USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 7/6/2021

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ X
UNITED STATES OF AMERICA,

    -against-

KENNETH SMITH,

                 Defendant.
------------------------------------------------------------ X

16-CR-82 (VEC)

ORDER

VALERIE CAPRONI, United States District Judge:

WHEREAS on March 11, 2021, Mr. Smith, proceeding *pro se*, filed a Motion for Compassionate Release pursuant to 18 U.S.C. § 3582(c), Dkt. 290;

WHEREAS on April 9, 2021, the Government opposed Mr. Smith's Motion, and provided Mr. Smith's Bureau of Prisons ("BOP") medical records (under seal) and his disciplinary and education records, Dkt. 294;

WHEREAS on April 27, 2021, Mr. Smith replied in support of his Motion, Dkt. 297;

WHEREAS on April 28, 2021, the Court ordered the Government and Mr. Smith to provide information about Mr. Smith's vaccination status, Dkt. 298;

WHEREAS on May 7, 2021, the Government informed the Court that Mr. Smith had been offered the Moderna vaccine on April 26, 2021, but that he had declined to take it, Dkt. 299;

WHEREAS on May 25, 2021, Mr. Smith confirmed that he had been offered a vaccine but declined to take it, Dkt. 301;

WHEREAS on July 1, 2021, Mr. Smith sent additional medical records concerning a recent trip to the hospital for chest pain, Dkt. 304;

WHEREAS Mr. Smith has exhausted his administrative remedies as required by 18 U.S.C. § 3582(c)(1)(A), Dkt. 290 at 7; Dkt. 290-1; Dkt. 294 at 2;

WHEREAS Mr. Smith's release date is currently July 2, 2025, Dkt. 294 at 2; and

WHEREAS this Court has broad discretion when deciding a motion pursuant to 18 U.S.C. § 3582(c), but must determine (i) whether extraordinary and compelling reasons exist to grant such relief, and (ii) whether a sentence reduction would be consistent with the sentencing factors set forth in 18 U.S.C. § 3553(a), *United States v. Brooker*, 976 F.3d 228, 234–35 (2d Cir. 2020); *United States v. Rodriguez*, No. 17-CR-157, 2020 WL 3051443, at *1 (S.D.N.Y. June 8, 2020);

IT IS HEREBY ORDERED that Mr. Smith's Motion for Compassionate Release is DENIED. Mr. Smith has not demonstrated the existence of an "extraordinary and compelling reason" to reduce his sentence. 18 U.S.C. § 3582(c)(1)(A)(i). Mr. Smith contends that the COVID-19 pandemic, including new variants of the disease, amount to an extraordinary and compelling reason for a sentence reduction. Mot., Dkt. 290 at 2; Reply, Dkt. 297 at 2. Mr. Smith reports that his kidney disease, including that he has only one kidney, as well as his high blood pressure, constitute pre-existing conditions that could exacerbate a course of infection, were he to contract COVID-19. *See* Mot., Dkt. 290 at 1 (describing his medical conditions); BOP Ltr., Dkt. 290-1 (noting that Mr. Smith has kidney disease). He also alleges that he recently suffered a minor stroke, requiring hospitalization. Ltrs., Dkt. 301; Dkt. 304.

The Court finds that even with such pre-existing conditions, the COVID-19 pandemic does not constitute an extraordinary and compelling reason to reduce Mr. Smith's sentence. There is obviously a greater risk of contracting COVID-19 if one is living in a congregate setting than if one is living in a single-family home or apartment. But FCI Edgefield seems to be

effectively managing the situation: as of the date of this decision, no inmate or staff in that facility is currently testing positive for COVID-19. *See* www.bop.gov/coronavirus/.

That said, Mr. Smith is quite correct that given his underlying conditions, he could be at significant risk were he to contract COVID-19. And he is correct that the new variants that are circulating are particularly contagious. But, unlike the situation that existed just a year ago, there are now three highly effective vaccines that have been approved for use in the United States. Any one of those vaccines would likely protect Mr. Smith, even given his underlying conditions, from a severe or fatal course of COVID-19, were he to contract it.

Approved vaccines against COVID-19 are readily available in BOP facilities. Mr. Smith was offered the vaccine in April, but, despite his professed fear of COVID, he declined to take it. *See* Ltrs., Dkt. 299; Dkt. 301. Mr. Smith explained to the Court that he declined the vaccine because he was worried: about the effect of the vaccine on his pre-existing conditions; that he would suffer other vaccine side-effects; or that he would have an allergic reaction. Ltr., Dkt. 301 at 1–3. The Court highly encourages Mr. Smith to get vaccinated. The COVID-19 vaccine is safe, including for people with kidney disease and high blood pressure.[1] The Court finds that the availability of the COVID-19 vaccine counsels against finding that the pandemic constitutes an extraordinary or compelling reason to reduce Mr. Smith's sentence.

Mr. Smith further asserts that he is no longer the same person that he was when he committed the crimes for which he is currently incarcerated, and that he no longer associates

---

[1] The Center for Disease Control and Prevention ("CDC") encourages people with such medical conditions to "get a COVID-19 vaccine as soon as you can." *People with Certain Medical Conditions*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited June 26, 2021). Additionally, any side-effects of the vaccine, which are most often mild and include low-grade fever and muscle aches, are considerably less harmful than the symptoms associated with a severe course of a COVID-19 infection. *See Possible Side Effects After Getting a COVID-19 Vaccine*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/vaccines/expect/after.html (last visited June 26, 2021). Finally, severe allergic reactions to the COVID-19 vaccine are reportedly extremely rare. *See Frequently Asked Questions about the COVID-19 Vaccine*, N.Y. Times (May 12, 2021), https://www.nytimes.com/2021/04/02/well/live/covid-vaccine-side-effects-faq.html.

himself with a criminal lifestyle. Reply, Dkt. 297 at 2. Additionally, Mr. Smith has participated in multiple BOP classes, which, he asserts, further supports his argument that he is on the road to rehabilitation. *See* Prison Educ. Record, Dkt. 294-2. The Court is happy to see that Mr. Smith has taken advantage of prison education programs and hopes that he will continue his education and is entirely sincere about his commitment to rehabilitation. But "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason" to reduce a sentence. 28 U.S.C. § 994(t); *see also Brooker*, 976 F.3d at 237–38. To find otherwise would convert the process for obtaining compassionate release into a de facto parole system, through which defendants with good behavior are rewarded with sentence reductions. That was not Congress' intent when it changed the law to allow incarcerated defendants to apply directly to the sentencing judge for a reduction of sentence. Thus, although Mr. Smith's prison disciplinary records call into question whether Mr. Smith has entirely put his prior life behind him, *see* Disciplinary Record, Dkt. 294-1,[2] even if Mr. Smith had unequivocally demonstrated that he has been rehabilitated, that would not be grounds on its own for a sentence reduction.

Even if the Court were to conclude that Mr. Smith had demonstrated an extraordinary and compelling reason to reduce his sentence, the Court finds that at least two of the Section 3553 factors counsels against a reduction of sentence: the seriousness of the offense and protection of the public. As noted at Mr. Smith's sentencing, his offenses were extremely serious. Sentencing Tr., Dkt. 197 at 13. Mr. Smith and his co-conspirators committed three armed robberies of armored trucks in broad daylight; they were lucky that no one got hurt. By the time of the second and third robberies, Mr. Smith was well aware that one of his co-conspirators had a gun.

---

[2] The Court notes that Mr. Smith has provided explanations for the disciplinary infractions. *See* Reply, Dkt. 297 at 3–4. The fact remains, however, that he has incurred four disciplinary incidents since he was sentenced, including one for fighting approximately 17 months ago. Although in Mr. Smith's telling he was the entirely innocent victim of an unprovoked sneak attack, the Court is skeptical that those are the facts.

*Id.* at 4, 14.  As the Court said at the time of sentencing: "It wasn't just one armored car robbery but three.  After the first one you knew there were guns.  You could have walked away at that point but you didn't.  So protecting the public is important to me."  *Id.* at 13–14.  Because the seriousness of Mr. Smith's offense is undeniable and the safety of the public remains paramount, a reduction of Mr. Smith's sentence from what was already a substantial downward departure from the guidelines,³ is unwarranted.

The Clerk of Court is respectfully directed to close the open motion at docket entry 290.  The Clerk is further directed to mail a copy of this order to Kenneth Smith, Reg. No. 75260-054, FCI Edgefield, FEDERAL CORRECTIONAL INSTITUTION, P.O. BOX 725, EDGEFIELD, SC 29824, and to note mailing on the docket.

**SO ORDERED.**

**Date:  July 3, 2021**
**New York, New York**

**VALERIE CAPRONI**
**United States District Judge**

---

³   Mr. Smith's guidelines were 171 to 183 months; he was sentenced to 132 months, roughly 75% of the bottom of the guidelines range.  Sentencing Tr., Dkt. 197 at 6, 14.